598 P.2d 1155

**LOCAL 2238, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Petitioner-Appellee,**

v.

**NEW MEXICO STATE HIGHWAY DEPARTMENT et al., Respondents-Appellants.**

**NEW MEXICO STATE HIGHWAY DEPARTMENT et al., Petitioners-Appellants,**

v.

**LOCAL 2238, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Respondent-Appellee.**

No. 12005.

Supreme Court of New Mexico.

July 26, 1979.

Toney Anaya, Atty. Gen., Richard L. Russell, Chief Counsel Asst. Atty. Gen., V. Henry Rothschild, III, Deputy Chief Counsel Asst. Atty. Gen., Santa Fe, for appellants.

David L. Norvell, Jon T. Kwako, Albuquerque, for appellee.

OPINION

PAYNE, Justice.

Local 2238, of the American Federation of State, County and Municipal Employees, brought a mandamus action in district court against the State Highway Department, the State Department of Finance & Administration, and the Governor to compel compli-

ance with an arbitration decision awarding increased per diem payments to union members. The trial court held that the arbitration award was binding and awarded the union $343,174.60 in damages. The Highway Department appeals.

The arbitrator held that the Highway Department was obligated under its collective bargaining agreement with the union to pay a "special living allowance" to any union employee who regularly reports to a work site away from the district or general office of the Department and outside of the municipal limits of the employee's place of residence. The Highway Department contends that this decision is unenforceable because it violates § 10–8–4 B, N.M.S.A. 1978 of the New Mexico Per Diem and Mileage Act, which provides:

> Every salaried public officer or employee who is traveling within the state but away from his home and away from his designated post of duty on official business shall receive not to exceed twenty-four dollars ($24.00) a day for each day spent in the discharge of his official duties.

The arbitrator rejected the Highway Department's contention that the contractural provision violates § 10–8–4 B.

To clearly understand the arbitrator's decision it is necessary to review the history which led up to the collective bargaining agreement.

Since 1960 the Highway Department has paid per diem or a special living allowance to certain of their employees who were called to work away from their regular place of employment. In 1965 the Highway Department began to pay five dollars per day to construction crew employees whose work site was more than thirty-five miles from their district office. In 1970 a new policy was issued by the Highway Department whereby a special living allowance in the amount of seven dollars per day was paid to certain employees whose work was confined to specific areas more than thirty-five miles away from their "home base" and where the work continued for a considerable period of time. This policy also required that the employee remain overnight.

The first contract between the Highway Department and the union was executed in 1973. It provided that "to be eligible for per diem, an employee must be thirty-five (35) miles away from his duty station, and the nature of his assignment normally require him to remain overnight." Since 1973 the Highway Department's application of this provision has ignored the requirement that an employee remain away from his duty station overnight in order to qualify for the allowance. The Highway Department has never made an effort to determine whether or not employees physically remained overnight. If the work site was more than thirty-five miles from the general or district office, an employee was eligible for and received the payment.

The negotiations, which led to the contract that is now in dispute, were conducted in 1975. In these negotiations the Highway Department proposed to divide the expense reimbursement policy into two categories, "per diem" and "special living allowance." Special crews who were regularly away from the district or general office and at one location for several consecutive days would receive the special living allowance. Employees of the general or district office who were away from such office only on sporadic intervals and not in one particular location for any lengthy period would receive per diem. This distinction was eventually adopted by the parties in their bargaining agreement.

From the beginning of the negotiations the union insisted that the thirty-five mile radius be deleted as a condition for receiving the special living allowance. The Highway Department consistently sought to maintain that requirement.

The union took the position that it was willing to have the affected employees report to their district office or home base for each day of work to be transported to the job site by the Highway Department. The Highway Department rejected this proposal.

During the last day of negotiations the thirty-five mile radius requirement was de-

leted from the special living allowance provision of the bargaining agreement, but it was retained in the per diem provision. The bargaining agreement was signed by the parties and was subsequently approved by the State Personnel Board and the Office of the Attorney General. The special living allowance provision was approved by the Department of Finance & Administration.

 In light of the bargaining history and the fact that a thirty-five mile condition was retained in only the per diem clause, we agree with the arbitrator and the district court that it was clear that the parties intended that the thirty-five mile condition would not apply to the special living allowance provision. It should be borne in mind that the thirty-five mile restriction and the overnight requirement are two separate and distinct issues. The thirty-five mile restriction was not imposed by statute nor has it been shown to be a rule or regulation. Consequently, the Highway Department, once it agreed to drop the restriction during negotiations, cannot now be allowed to enforce it.

The special living allowance provision, as finally adopted, provides in part:

Members of the bargaining unit . . shall be placed on a special living allowance rate of $1.60 per hour while traveling away from their duty station. . . This special living allowance shall be paid for a maximum of eight (8) hours per day.

 We do not agree with the Highway Department's contention that payment of this allowance violates § 10–8–4 B of the Per Diem and Mileage Act.

The New Mexico Per Diem and Mileage Act does not on its face prohibit partial per diem payments. It does not specify how far a person must travel to be "away from his home and away from his designated post of duty." Nor does it specify what is meant by the use of the phrase "for each day spent in the discharge of his official duties."

The director of the Department of Finance & Administration testified that he was charged with the responsibility of implementing the provisions of the Per Diem and Mileage Act or of designating the heads of the various departments to do so in his stead. He testified that it had been the policy of the Department of Finance & Administration in applying the Act to other agencies to break a day into one-quarter segments for the purpose of reimbursement for mileage and per diem. He also stated that he had allowed the Highway Department to act as its own fiscal agent in the payment of partial per diem payments under the Act.

The Highway Department agreed in the collective bargaining agreement to make partial per diem payments in the form of the special living allowance. Although the amount of these allowance payments exceeded the normal amount of payments allowed by the Department of Finance & Administration for other agencies, they did not exceed the maximum twenty-four dollars per day limit imposed by the Act. There is nothing in the Act which is in conflict with the interpretation given to it by either the director of the Department of Finance & Administration or the Highway Department. Therefore, we cannot say that the special living allowance provision agreed upon by the parties is violative of § 10–8–4 B.

We affirm the decisions of the arbitrator and the district court upholding these partial payments.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, J., concur.